J-A10006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DARRELL DANDRIDGE AND  SHEILA DANDRIDGE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NORTHEAST MEDICAL CENTER, JEL BLUEGRASS LLC., AND PAYSON HOLDINGS LLC | : | No. 1793 EDA 2020 |
| | : | |
| APPEAL OF: BORIS OVRUTSKY | : | |

Appeal from the Order Entered August 20, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 160102464

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.:                **FILED FEBRUARY 11, 2022**

This matter compels us to address whether the trial court properly corrected a caption to correct the name of a in a civil case after judgment has been filed. Upon careful review, we affirm.

In the morning of February 14, 2014, Darrel Dandridge was descending the handicap ramp outside of the building located at 9200 Marshall Street in Philadelphia. As Dandridge was walking, he slipped and fell on accumulated ice that was hidden under fresh snow. Dandridge suffered injuries to his head, neck and back from the fall. At the time of the accident, the registered deed

_____

* Retired Senior Judge assigned to the Superior Court.

stated that the titled property owner was an individual named Boris Ovrutsky, who purchased the property on January 5, 2005. In April of 2014, Ovrutsky sold the property.

On January 20, 2016, Dandridge and his wife, Sheila Dandridge, filed a complaint that initiated this matter. The Dandridges' complaint named eight defendants including one styled as Northeast Medical Center d/b/a NE Medical Center. However, the complaint did not specify Ovrutsky, the titled owner of the premises, as a named defendant.

After several unsuccessful attempts, the Dandridges effected service of the complaint on "Northeast Medical Center, [care of] Boris Ovrutsky" on June 21, 2016. Ovrutsky did not respond or otherwise object to this service.

In September of 2016, after the statute of limitations expired, the Dandridges filed a motion to amend their complaint, which sought to amend or amplify the designation of "Northeast Medical Center" to "Boris Ovrutsky d/b/a Northeast Medical Center." On October 10, 2016, Ovrutsky's counsel filed a response to the motion to amend. Ovrutsky's counsel also filed a praecipe to attach documents and a supplemental brief, which included leases reflecting that Ovrutsky was leasing the property in an individual capacity. On November 29, 2016, the trial court issued an order that simply denied the motion to amend the complaint without any indication as to its reasoning. Consequently, Ovrutsky had no further participation in the matter.

The case proceeded to arbitration and then, upon appeal of the arbitration award by the Dandridges, to a trial held on June 4, 2018. On June 8, 2018, the trial court returned a verdict in favor of the Dandridges and awarded damages in the amount of $90,606.74. No post-trial motions were filed. On October 2, 2018, the Dandridges filed a praecipe to enter judgment, and judgment was entered that day.

On December 5, 2018, the Dandridges filed a second motion to amend the complaint, which was nearly identical to the motion that the court denied on November 29, 2016. On June 27, 2019, the trial court entered an order granting the Dandridges' request to amend the complaint and noted that judgment was entered against Ovrutsky.

On February 14, 2020, the Dandridges filed a praecipe to issue a writ of execution, and Ovrutsky filed an emergency motion to stay the writ of execution on March 5, 2020, which the trial court granted. On March 6, 2020, Ovrutsky filed a motion seeking to vacate the June 27, 2019 order and strike the judgment. On August 5, 2020, the trial court held a hearing on the motion and, on August 20, 2020, denied the motion. This timely appeal followed in which Ovrutsky raises multiple challenges to the trial court's denial of his motion.

Ovrutsky set forth six challenges to the trial court's denial of his motion to vacate its order dated June 27, 2019. Specifically, the issues raise claims

that the order (a) violated the coordinate jurisdiction rule, (b) was devoid of legal effect pursuant to Pa.R.C.P. 227.1 and Pa.R.C.P. 227.4, (c) violated 42 Pa.C.S.A. §5505, (d) entered judgment against Ovrutsky without notice that judgment could be entered against him, (e) should have been stricken, and (f) should have been vacated on the basis of extraordinary causes and equitable considerations. *See* Appellant's Brief at 4-6. Our review will focus on whether the trial court properly amended the caption under Pa.R.C.P. 1033 and entered judgment, and, if not, whether the trial court should have granted the motion to strike.

It is well settled that a petition to open or strike judgment is an appeal to the equitable powers of the court, and absent a manifest abuse of discretion, the trial court's decision will not be disturbed on appeal. ***See PNC Bank v. Kerr***, 802 A.2d 634, 638 (Pa. Super. 2002). Accordingly, a motion to strike does not involve the discretion of the court. ***See Wells Fargo Bank, N.A. v. Lupori***, 8 A.3d 919, 920 (Pa. Super. 2010) (citation omitted). A motion to strike "is not a chance to review the merits of the allegations of a complaint." ***Oswald v. WB Pub. Square Assocs., LLC***, 80 A.3d 790, 794 (Pa. Super. 2013) (citation omitted). Rather, a motion to strike a judgment "is the remedy sought by one who complains of fatal irregularities appearing on the face of the record." ***U.S. Bank Nat'l Ass'n for Pa. Hous. Fin. Agency v. Watters***, 163 A.3d 1019, 1028 (Pa. Super. 2017) (citation omitted).

A petition to strike a judgment is aimed at defects that affect the validity of the judgment itself and must be granted when a fatal defect appears on the face of the record. **See Oswald**, 80 A.3d at 793-794. "Matters outside of the record will not be considered, and if the record is self-sustaining, the judgment will not be stricken." **Vogt v. Liberty Mutual Fire Insurance Co.**, 900 A.2d 912, 916 (Pa. Super. 2006) (citation omitted).

We are mindful that the test our courts have long used to determine if an amendment to a caption is permissible following the expiration of the statute of limitations is whether the plaintiff sued the correct party, but under the wrong name, or whether the plaintiff sued the wrong party and sought to name another party to the case. **See Anderson Equipment Co. v. Huchber**, 690 A.2d 1239, 1241 (Pa. Super. 1997) (citations omitted). Specifically, "where the wrong party was sued and the amendment is designed to substitute another, distinct party, it will be disallowed." **Id**. (citation omitted). In short, such practice was prohibited beyond the statute of limitations.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the comprehensive opinion authored by the Honorable Stella Tsai of the Court of Common Pleas of Philadelphia County, dated November 16, 2020. We conclude that Judge Tsai's opinion adequately and accurately addresses each of Ovrutsky's issues. Based on our review of the record, the evidence is sufficient to support the trial court's determination that the Dandridges sued the correct defendant but under the wrong name.

Accordingly, we can find no abuse of discretion in the trial court's order granting the motion to amend or the order denying the motion to vacate. We therefore affirm on the basis of the trial court's opinion.

Order affirmed.

Judge Colins joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2022

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT
TRIAL DIVISION – CIVIL SECTION

DARRELL DANDRIDGE AND : 
SHEILA DANDRIDGE, : **Superior Court No.:**
    **Plaintiffs-Appellees** : **1793 EDA 2020**
: 
    v. : **JANUARY TERM, 2016**
: **No. 2464**
BORIS OVRUTSKY D/B/A : **(160102464)**
NORTHEAST MEDICAL : **Control No.: 20030918**
CENTER, ET AL. : 
    **Defendant-Appellant** : 

## OPINION OF THE TRIAL COURT PURSUANT TO PA. R.A.P. 1925(a)

### I.   Introduction and Procedural History

On June 4, 2018, this Court conducted a bench trial on Plaintiffs' claims against Northeast Medical Center, the named Defendant in this action. These claims arose from Plaintiff Darrell Dandridge's fall on the ramp leading to the entrance of a medical office building located at 9150–9200 Marshall Street, Philadelphia, PA 19114 (the "Property"), which is known as the Northeast Medical Center. Plaintiff Darrell Dandridge was present and represented by Jeffrey Zimmerman, Esquire of Rovner, Allen, Rovner, Zimmerman, and Schmidt. No individual or counsel appeared at trial on behalf of Defendant Northeast Medical Center, even though notice of the trial time and date was duly served on Northeast Medical Center at the residence of Boris Ovrutsky, its sole proprietor and owner. We found in favor of Plaintiffs and awarded damages in the amount of $90,606.74 in a written decision filed on June 8, 2018. No post-trial motions were filed. Judgment was entered on October 2, 2018 upon Praecipe of the Plaintiff.

On December 5, 2018 Plaintiffs filed a Motion to Amend Complaint by substituting "Boris Ovrutsky d/b/a Northeast Medical Center" in place of "Northeast

Dandridge Etal Vs Northeast Medical Center E-OPFLD



16010246400132

Medical Center" ("the December 2018 Motion"). The December 2018 Motion was served upon Mr. Ovrutsky and his counsel, but neither Mr. Ovrutsky nor his counsel responded to the December 2018 Motion. The December 2018 Motion sought similar relief to Plaintiffs' September 2016 Motion to Amend. Mr. Ovrutsky filed a response to that September 2016 Motion, and Honorable Arnold L. New denied that motion without comment and without prejudice. For the reasons stated in our Opinion of June 27, 2019 (attached as Exhibit "A"), we granted the Plaintiffs' December 2018 Motion, concluding that that denying Plaintiffs' December 2018 Motion to Amend would constitute a "manifest injustice" under Pennsylvania law.

Over eight months later, on March 6, 2020, Mr. Ovrutsky brought a Motion to Vacate the June 27, 2019 Order and Strike the judgment entered against him, which this Court denied in its Order and Memorandum Opinion of August 19, 2020 and is now the subject of this appeal.

## II.    Factual Findings

In pleadings and papers filed with the trial court, Mr. Ovrutsky admits to being the owner and operator of the property identified as "Northeast Medical Center" located at 9150–9200 Marshall Street, where the accident occurred, but has endeavored to deny that he and "Northeast Medical Center" are one and the same.[1] Mr. Ovrutsky, an individual, acquired the property *from* an entity called "Northeast Medical Center Associates," and then operated the property himself, as a sole proprietor, under the

---

[1] Ovrutsky Brief at pp. 2–3 (filed October 10, 2016); Ovrutsky Brief, Exhibit A at pp. 2–3, 8–10, 15–16 (leases naming Boris Ovrutsky as landlord for the property) (filed October 11, 2016); Ovrutsky Supplemental Brief at p. 2 (filed October 11, 2016).

name "Northeast Medical Center." Mr. Ovrutsky never alleged, much less proved, that he created a corporation, limited liability company partnership, or other entity to own, operate, or manage the property. Mr. Ovrutsky never submitted articles of incorporation, certificate of organization, or other papers to the court to indicate that an entity known as "Northeast Medical Center" separate from himself existed on or before January 20, 2016.

Failure to name the correct party is a technical defect that can be cured by amendment of the complaint at any time, absent prejudice to the opposing party. *See, e.g., Zercher v. Coca Cola USA*, 438 Pa. Super. 142, 651 A.2d 1133, 1134 (1994) ("to secure a determination of cases on their merits the trial court should grant, whenever possible, a petition to change the name on a pleading" unless there is prejudice or surprise to the other party) (citations omitted); *Horowitz v. Universal Underwriters Ins.*, 397 Pa. Super. 473, 580 A.2d 395, 398 (1990) (Rule 1033 "has repeatedly been interpreted as requiring the liberal evaluation of amendment requests in an effort to secure a determination of cases based upon their merits rather than based upon a mere technicality.") (citations omitted).

Although the December 2018 Motion was filed on December 5, 2018, after the statute of limitations had expired,[2] it was still feasible for the Plaintiffs to obtain such relief where, as here, there is no question that amendment is being sought to correct how the Defendant is named and not to substitute a new and distinct entity or person in its place. When addressing a request to amend the designation of another party after

---

[2] The fall occurred on February 14, 2014, and the statute of limitations ran on February 14, 2016. 42 Pa.C.S.A. § 5524(2).

the statute of limitations has run, we must determine whether the right party was originally sued under the wrong designation. The operative test is "whether the right party was sued but under a wrong designation, or whether a wrong person was sued and the amendment was designed to substitute another and distinct party." If the right party was sued under the incorrect name, and the moving party is not seeking the substitution of a distinct party, the motion to amend the complaint should be granted. *See, e.g., Wicker v. Esposito*, 500 Pa. 457, 457 A.2d 1260, 1260 (1983) (per curiam); and *Hamilton v. Bechtel*, 441 Pa. Super. 390, 657 A.2d 980, 981 (1995).

In *Waugh v. Steelton Taxicab Co.*, plaintiff was injured riding in a taxicab owned by the Steelton Taxicab Company, and he filed suit against that entity, erroneously believing it to be a corporation. *Waugh*, 89 A.2d 527, 527–28 (Pa. 1952). Plaintiff Waugh later discovered that Steelton Taxicab Company was not a corporation but actually was the fictitious name used by Anthony John Kosir to conduct his taxicab business. *Id.* at 528. Service had been made upon Kosir when the plaintiff still thought that Kosir was the principal of Steelton Taxicab Company. After the statute of limitations had run, plaintiff sought to amend the complaint to replace Steelton Taxicab Company with Kosir as the defendant, which the trial court denied. *Id.*

The Pennsylvania Supreme Court reversed, holding that, "[i]t would be strange indeed if the law would permit a person actually responsible for a civil or criminal act to escape accountability because the summons or warrant served on him named him Richard Roe instead of John Doe." *Id.* The court permitted the complaint to be amended because "no one other than Kosir was ever involved because there was no

4

entity as the Steelton Taxicab Company apart from the personality of Kosir." ***Id.*** at 529 (emphasis original).

In keeping with ***Waugh,*** we concluded that that the complaint caption should be amended to name the Defendant as "Boris Ovrutsky d/b/a Northeast Medical Center." Having failed to appear at trial or respond to the Motion to Amend of his own accord, Mr. Ovrutsky is in no position to argue prejudice or surprise in the disposition of this matter.

## III. __Discussion__

In his Statement of Matters Complained of on Appeal, Defendant contends that the Court erred as a matter of law and abused its discretion in denying Mr. Ovrutsky's Motion to Vacate on the following grounds which we address seriatim:

A. The court erred as a matter of law in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis that the court's order dated June 27, 2019 granting plaintiffs' second motion to amend the complaint was entirely devoid of legal effect pursuant to Pa. R.C. P. 227.1 and Pa. R.C.P. 227.4;

B. The court erred as a matter of law in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis that the court's order dated June 27, 2019 granting plaintiffs' second motion to amend the complaint the Court's Order dated June 27, 2019 violated 42 Pa. C.S.A. §5505;

C. The court erred as a matter of law in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis that the court's order dated June 27, 2019 granting plaintiffs' second motion to amend the complaint violated the Coordinate Jurisdiction Rule;

D. The court erred as a matter of law and abused its discretion in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis that the court's order dated June 27, 2019 granting plaintiffs' second motion to amend the complaint entered judgment against Boris Ovrutsky, an individual, without notice that judgment could be entered against him;

5

E. The court erred as a matter of law in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis that the court's order dated June 27, 2019 granting plaintiffs' second motion to amend the complaint and entering judgment against Boris Ovrutsky, an individual, should have been stricken;

F. The court erred as a matter of law and abused its discretion in denying Mr. Ovrutsky's motion to vacate its order dated June 27 2019 on the basis of extraordinary causes and equitable considerations.

*See* Defendant's Statement of Matters Complained of on Appeal, October 1, 2020, at 1-2.

For the reasons stated below, we find that the Defendant's arguments lack merit and we respectfully ask the Superior Court to affirm our decision.

### A. It was proper for this Court to grant Plaintiffs' December 2018 Motion to Amend as Pennsylvania Rules of Civil Procedure 227.1 and Pa. R.C.P. 227.4 are inapplicable to Plaintiffs' Motion.

In his first issue, Defendant contends that Plaintiffs' December 2018 Motion to Amend sought to modify this Court's decision and violated Pa.R.C.P. 227.1, which governs Motions for Post-Trial Relief, because it was filed more than 10 days after trial. We disagree. Pa.R.C.P. 227.1 is inapplicable as the Plaintiffs' December 2018 Motion to Amend does not constitute a Motion for Post-Trial Relief which seeks alteration of the actual party against whom judgment was entered. Rather, the sole purpose of the December 2018 Motion to Amend was to correct the name of the same entity we found responsible for Plaintiffs' injuries.

Nor does the Court's June 27, 2019 Order and Opinion violate Pa. R. C. P. 227.4 for being issued 120 days after the entry of judgment. The Order and Opinion neither grants a "motion to strike, open, or vacate" the judgment nor constitutes an entry of

6

default judgment. Defendant's Motion, ¶ 81 (quoting ***Morningstar v. Hoban***, 819 A.2d 1191, 1194 (Pa. Super. 2003).

### B. It was proper to grant Plaintiffs' December 2018 Motion to Amend under the Pennsylvania Rules of Civil Procedure as the Court's Order dated June 27, 2019 does not violate 42 Pa. C.S.A. §5505.

Here, the December 2018 Motion to Amend was brought in accordance with Pa. R.C.P. 208.1, which simply defines a "motion" as "any application to the court for an order made in any civil action or proceeding" and Pa. R.C.P. 1033, which provides that "[a] party...may at any time...correct the name of a party," including after judgment. ***See*** Pa. R.C.P. 1033. The December 2018 Motion to Amend did not ask the court to "modify or rescind" its final order by altering the disposition of any claims or parties in violation of 42 P.S. § 5505. ***See Haviland v. Kline & Specter, P.C.***, 182 A.3d 488, 492 (Pa. Super. 2018)("final orders are defined as orders disposing of all claims and all parties."). In fact, the Motion sought no change in the disposition of the claims or substitution of parties but requested that we amend the caption by correcting the name of one party, the Defendant.

### C. The Court's order dated June 27, 2019 granting Plaintiffs' December 2018 Motion to Amend does not violate the Coordinate Jurisdiction Rule.

The December 2018 Motion to Amend was properly brought and did not violate the coordinate jurisdiction rule because additional facts had been brought to light. As this court explained in its original Opinion of June 27, 2019:

> The prior order did not state any reasons for the denial of the Plaintiff[s']
> prior motion to amend, which, based on information and belief, was issued

7

on the papers alone without a hearing. At trial, we had an opportunity to assess and consider the relevant facts in the context of the entire record that would not have been available to Judge New in 2016.

Order, June 27, 2019, at 11. Indeed, the Defendant himself stated in the underlying Motion to Vacate that the coordinate jurisdiction rule allows departure from an earlier ruling when there is "a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." Defendant's Motion, ¶¶ 94-95 (quoting *Ryan v. Berman*, 572 Pa. 156, 161, 813 A.2d 792, 795 (2002); *Goldey v. Trustees of Univ. of Pennsylvania*, 544 Pa. 150, 155, 675 A.2d 264, 267 (1996)). The Plaintiffs also point to part of the reasoning in *Riccio v. Am. Republic Ins. Co.* that the Defendant misses in his citation of that same case:

> a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

Plaintiffs' Memorandum, at p. 8 (quoting *Riccio, supra*, 550 Pa. 254, 261, 705 A.2d 422, 425 (1997)).

While seeking similar relief, the Plaintiffs' December 2018 Motion to Amend is not "identical" to the September 2016 Motion. *Contra* Defendant's Memorandum, March 6, 2020, at 18. In fact, Plaintiffs did provide additional facts that were not available for and not included in the September 2016 Motion before Judge New. *Id.* Specifically, the Plaintiffs asserted that this Court had determined that Mr. Ovrutsky had "accepted service of the Complaint for the Defendant on June 21, 2016 at his residence in Bucks County." Plaintiffs' December 2018 Motion to Amend, ¶ 16 (quoting Opinion, June 8, 2018, at 1). Plaintiffs also asserted that this "Court has indicated that

8

notice of trial was sent to the parties prior to the non-jury trial of the proceeding of which he was aware, yet he did not appear." *Id.* at ¶ 29. In its Opinion, this Court observed that "the record is clear that Mr. Ovrutsky owns the very property where the accident occurred, and owns and operates the property himself as 'Northeast Medical Center.'" Opinion, June 27, 2019, at 11. This Court properly considered the December 2018 Motion illuminated by new relevant facts that were explicitly entered as findings of fact in its Opinion and Verdict and granted the amendment. *Contra* Defendant's Reply, ¶ 142.

Finally, unlike *Campbell v. Attanasio*, 862 A.2d 1282 (Pa. Super. 2004) which Defendant cites to support his contention that our Order of June 27, 2019 runs afoul of the coordinate jurisdiction rule, this Court was presented with additional facts and evidence in deciding the December 2018 Motion to Amend. *See* Defendant's Memorandum, pp. 16-17; *see also* Plaintiffs' Reply, p. 9. The instant case is more akin to *Nobles v. Staples*, Inc., 150 A.3d 110 (Pa. Super. Ct. 2016), in which the Superior Court found no violation of the coordinate jurisdiction rule when a trial judge granted an equivalent of summary judgment to the defendant shortly after the plaintiff's expert witnesses had been precluded on motions in limine, even though a prior judge denied the defendant's earlier motion for summary judgment "without further comment." *See id.* at 112-13, 119-20. Here, we have a practically identical situation where Judge New did not provide any "further comment" or explanation for his denial of the September 2016 Motion to Amend. We cannot ascertain what facts were considered by Judge New and therefore the additional facts and the different procedural posture were free to be considered by this Court in the December 2018 Motion.

9

## D. Defendant Boris Ovrutsky had proper and timely notice of all relevant proceedings and that judgment could be entered against him.

Boris Ovrutsky had been properly served and notified of subsequent proceedings in this case including Plaintiffs' December 2018 Motion to Amend. Furthermore, the owner of those assets was properly served. Contrary to Mr. Ovrutsky's assertions throughout his Motion to Vacate, he **was** a party to this lawsuit as Northeast Medical Center, the fictitious name under which he owned the Property as its sole proprietor. It was in this capacity of owner and sole proprietor of the Property, which was fictitiously named and held out as Northeast Medical Center, that Mr. Ovrutsky was timely served on June 21, 2016 according to the Affidavit of Service filed on June 28, 2016. Mr. Ovrutsky accepted service at 3900 Pond View Lane, Huntington Valley, PA 19006, which was the same address where Plaintiffs eventually mailed the Praecipe to Enter Judgment. Under the mailbox rule, **see** Plaintiffs' Response, ¶ 39-41, "proof of a mailing raises a rebuttable presumption that the mailed item was received [, which] is not nullified solely by testimony denying receipt of the item mailed." ***Breza v. Don Farr Moving & Storage Co.***, 828 A.2d 1131, 1135 (Pa. Super. 2003) (citations and quotations omitted).

Here, Plaintiffs provided a certificate of service that was attached to the Praecipe and Defendant provided nothing other than counsel's assertions that Defendant did not receive the Praecipe. ***See*** Defendant's Exhibit J; ***see also*** Defendants' Motion, ¶ 38-41. Furthermore, Defendant's Notice of the December 2018 Motion to Amend, which Defendant claims was mailed to Defense Counsel's former address in Marlton, New Jersey, was also mailed to Mr. Ovrutsky's home address according to the Certificate of Service on December 2, 2018 – the same home address where Mr. Ovrutsky had initially

been served. ***See*** Defendant's Motion, ¶ 58; ***see also*** Defendant's Exhibit L. Regardless of the lack of automated emails in Defense counsel's inbox, these physical mailings – particularly to the Defendant's residence – constitute sufficient notice of the proceedings in this case. ***See*** Defendant's Reply, at p. 5-6. Ultimately, even though Mr. Ovrutsky may not have been a party in this case under the name "Boris Ovrutsky" – as indicated to Defense counsel by the e-filing system when he originally tried to file this Motion to Vacate – Mr. Ovrutsky was always a party in this case and received notice of the filings in his capacity as owner and sole proprietor of the Property fictitiously named "Northeast Medical Center." ***Id.*** at 6.

### E. The Court did not err in granting Plaintiffs' December 2018 Motion to Amend.

This Court denied Mr. Ovrutsky's underlying Motion to Vacate the June 27, 2019 Order and Strike the judgment entered against him. Although Mr. Ovrutsky has characterized the June 27, 2019 Order as an effective default judgment against him, it merely granted a name change to Northeast Medical Center, a fictious name under which Mr. Ovrutsky did business as a sole proprietor. Thus, the judgment had already effectively been entered against Mr. Ovrutsky when Plaintiffs filed the Praceipe on October 2, 2018 to enter judgment based on the June 8, 2018 verdict against Northeast Medical Center.

Although Mr. Ovrutsky is not and was not a corporate entity, he nevertheless held himself out as Northeast Medical Center by virtue of the sign on the Property that he owned and his lack of use of any other corporate entity to shield him from personal liability for the Property. Indeed, the leases Defendant provided as exhibits to his

11

Motion to Vacate indicate that he was doing business with the tenants of the Property under his own name. *See* Defendant's Motion, Exhibit F. Despite the repeated assertions of Mr. Ovrutsky that he had "no interest in or affiliation with a business entity known as Northeast Medical Center, NE Medical Center or Northeast Medical Center Associates," the record shows that Mr. Ovrutsky **was** a sole proprietor and owner operating under the fictitious name of "Northeast Medical Center," which was emblazoned on the sign identifying the Property.

As stated above, Pennsylvania law permits an amendment to the complaint such as this one, where the same assets remain subject to liability, because the amendment simply changes the name of the party by which the assets are identified and does not make new assets subject to liability by virtue of the new name. The Superior Court has held:

> When the original complaint seeks to impose liability against the assets of a business entity and the amendment is designed merely to correct the description of the business entity already made a party to the proceedings e.g., an amendment to change the party designation from a corporation to a partnership, the amendment is properly permitted.

*Fretts v. Pavetti*, 282 Pa. Super. 166, 171, 422 A.2d 881, 883 (1980) (allowing amendment after the lapsing of the statute of limitations to name a sole proprietor as defendant when the original named defendant was a fictitious name that the sole proprietor was operating under even though he was registered under a different fictitious name, finding that "[plaintiffs] were misled by the use of the name "Stop N Shop" when it was not properly registered, and they should not be prevented thereby from pursuing their action."); *see also Waugh, supra*. Here, the original complaint sought to impose liability against the assets of a business entity and that entity doing business was Boris Ovrutsky, the sole proprietor and owner of the Property at 9150-

12

9200 Marshall Street, Philadelphia, PA 19114, operating under the unregistered fictitious name of Northeast Medical Center. The assets subject to liability were the same before and after the amendment. Consequently, this Court's granting of the December 2018 Motion to Amend was proper as was this Court's denial of Mr. Ovrutsky's Motion to Vacate and Strike.

### F. There are no extraordinary causes or equitable considerations that justify granting Defendant's Motion to Vacate.

No circumstances – whether extraordinary causes or equitable considerations – warrant a vacating of the judgment after the 30 days allowed by 42 Pa.C.S.A. § 5505. Unlike the December 2018 Motion to Amend, this Motion to Vacate does seek "to modify or rescind" this Court's final order entering judgment pursuant to 42 Pa.C.S.A. § 5505 because this Motion seeks to extricate a party, Mr. Ovrutsky, from the judgment that was entered against him doing business as Northeast Medical Center and evade responsibility. For the reasons explained above, there are no circumstances "so grave or compelling as to constitute extraordinary cause justifying intervention by the court, such as the present profusion of dilatory tactics, [such that the] court may open or vacate its order after the 30-day period has expired." *First Union Mortg. Corp. v. Frempong*, 744 A.2d 327, 334 (Pa. Super. 1999) (citations and quotations omitted).

## IV.  Conclusion

For the foregoing reasons, this Court denied with prejudice the Motion to Vacate of Defendant Boris Ovrutsky d/b/a Northeast Medical Center and respectfully request that this decision be affirmed.

BY THE COURT:

Stella Tsai, J.
November 16, 2020

14

# EXHIBIT

## "A"

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT
### TRIAL DIVISION – CIVIL SECTION

DARRELL DANDRIDGE AND      :
SHEILA DANDRIDGE      :
     **Plaintiffs**      :
     :      **JANUARY TERM, 2016**
     **V.**      :      **No. 2464**
     :      **(160102464)**
NORTHEAST MEDICAL CENTER,      :      **Control No.: 18120514**
     **Defendant**      :

## ORDER

AND NOW, this 27th day of June, 2019, it is hereby ORDERED AND DECREED,

1. Plaintiff Darrell Dandrige's Motion to Amend Complaint is GRANTED.

2. The complaint shall be amended to correct the designation of the Defendant from "Northeast Medical Center" to "Boris Ovrutsky d/b/a Northeast Medical Center."

3. Judgment is entered in favor of Plaintiff Darrell Dandridge and against Defendant Boris Ovrutsky d/b/a Northeast Medical Center in the amount of $90,606.74.

BY THE COURT:

_____
Stella Tsai, J.

Dandridge Etal Vs Northeast Medical Center E-ORDOP

16010246400091

**DOCKETED**
**COMPLEX LIT CENTER**

JUL 2 2019

**J. STEWART**

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT
## TRIAL DIVISION – CIVIL SECTION

DARRELL DANDRIDGE AND : 
SHEILA DANDRIDGE, : 
    **Plaintiffs** : 
     :     JANUARY TERM, 2016
    **V.** :     No. 2464
     :     (160102464)
NORTHEAST MEDICAL CENTER, :     Control No.: 18120514
    **Defendant** :

## OPINION

**Tsai, J.**

### I.    Introduction

On June 4, 2018 this Court conducted a bench trial on Plaintiff Darrell Dandridge's premises liability claims against Northeast Medical Center, the named Defendant in this action. These claims arose from Plaintiff's fall on the ramp leading to the entrance of a medical office building located at 9150–9200 Marshall Street, Philadelphia, PA 19114 (the "Property"), which is known as the Northeast Medical Center. Plaintiff was present and represented by Jeffrey Zimmerman, Esquire of Rovner, Allen, Rovner, Zimmerman, and Schmidt. No individual or counsel appeared at trial on behalf of Defendant Northeast Medical Center, even though notice of the trial time and date was duly served on Northeast Medical Center at the residence of Boris Ovrutsky, its sole proprietor.

We found in favor of Plaintiff and awarded damages in the amount of $90,606.74 in a written decision filed on June 8, 2018. Judgment was entered on October 2, 2018.

Plaintiff filed a Motion Amend Complaint on December 5, 2018 seeking to amend the caption and substitute "Boris Ovrutsky d/b/a Northeast Medical Center" in place of

1

"Northeast Medical Center." The motion was served upon Mr. Ovrutsky and his counsel, but no response was ever filed. Earlier in the litigation, Plaintiff filed a substantially similar motion to amend that Mr. Ovrutsky responded to, and the Honorable Arnold L. New denied. For the reasons stated below, we conclude that denying Plaintiff's present Motion to Amend would constitute a "manifest injustice" under Pennsylvania law and, accordingly, grant the Motion.

## II. Discussion

### A. This Court May Permit Amendment of the Complaint After Judgment is Entered.

It is well established that "[t]he courts of this Commonwealth have been very liberal in allowing amendments to the caption to change the name of a party at any time, including after judgment." *See, e.g., Claudio v. Dean Machine Co.*, 574 Pa. 359, 831 A.2d 140, 146 (2003) (citing, *inter alia*, Pa. R.C.P. 1033; *Russeck v. Shapiro*, 170 Pa. Super. 89, 84 A.2d 514 (1951); *In re Francis Edward McGillick Foundation*, 406 Pa. Super. 249, 594 A.2d 322, 329 (1991), *rev'd on other grounds*, 537 Pa. 194, 642 A.2d 467 (1994)). *See also Hotel Redington v. Guffey*, 148 Pa. Super. 502, 25 A.2d 773, 776 (1942) (allowing amendment from the complaint to correct the name of defendant from "Hotel Redington" to "Redington Hotel Corporation" even after judgment had been entered) (citing, *inter alia*, *Fuel City Mfg. Co. v. Waynesburg Prod. Corp.*, 268 Pa. 441, 112 A. 145 (1920)).

### B. The Complaint May Be Amended to Correct the Name of a Party.

Failure to name the correct party is a technical defect that can be cured by amendment of the complaint at any time, absent prejudice to the opposing party. *See,*

2

*e.g., Zercher v. Coca-Cola USA*, 438 Pa. Super. 142, 651 A.2d 1133, 1134 (1994) ("to secure a determination of cases on their merits the trial court should grant, whenever possible, a petition to change the name on a pleading" unless there is prejudice or surprise to the other party) (citations omitted); *and Horowitz v. Universal Underwriters Ins.*, 397 Pa. Super. 473, 580 A.2d 395, 398 (1990) (Rule 1033 "has repeatedly been interpreted as requiring the liberal evaluation of amendment requests in an effort to secure a determination of cases based upon their merits rather than based upon a mere technicality.") (citations omitted).

Although the instant motion was filed on December 5, 2018, well after the statute of limitations has expired,[1] it is still feasible for the Plaintiff to obtain such relief where, as here, there is no question that amendment is being sought to correct how the Defendant is named and not to substitute a new and distinct entity or person in its place. When addressing a request to amend the designation of another party after the statute of limitations has run, we must determine whether the right party was originally sued under the wrong designation. The operative test is "whether the right party was sued but under a wrong designation, or whether a wrong person was sued and the amendment was designed to substitute another and distinct party." If the right party was sued under the incorrect name, and the moving party is not seeking the substitution of a distinct party, the motion to amend the complaint should be granted. *See, e.g., Wicker v. Esposito*, 500 Pa. 457, 457 A.2d 1260, 1260 (1983) (*per curiam*); *and Hamilton v. Bechtel*, 441 Pa. Super. 390, 657 A.2d 980, 981 (1995).

---

[1] The fall occurred on February 14, 2014, and the statute of limitations ran on February 14, 2016. 42 Pa.C.S.A. § 5524(2).

3

In *Waugh v. Steelton Taxicab Co.*, plaintiff was injured riding in a taxicab owned by the Steelton Taxicab Company, and he filed suit against that entity, erroneously believing it to be a corporation. 89 A.2d 527, 527–28 (Pa. 1952). Plaintiff Waugh later discovered that Steelton Taxicab Company was not a corporation but actually was the fictitious name used by Anthony John Kosir to conduct his taxicab business. *Id.* at 528. Service had been made upon Kosir when the Plaintiff still thought that Kosir was the principal of Steelton Taxicab Company. After the statute of limitations had run, Plaintiff sought to amend the complaint to replace Steelton Taxicab Company with Kosir as the defendant, which the trial court denied. *Id.*

The Pennsylvania Supreme Court reversed, holding that, "[i]t would be strange indeed if the law would permit a person actually responsible for a civil or criminal act to escape accountability because the summons or warrant served on him named him Richard Roe instead of John Doe." *Id.* The court permitted the complaint to be amended because "no one other than Kosir was ever involved because *there was no entity* as the Steelton Taxicab Company *apart from the personality of Kosir.*" *Id.* at 529 (emphasis original).

Similarly, in *Jacob's Air Conditioning & Heating v. Associated Heating & Air Conditioning*, plaintiff Jacobs Air Conditioning and Heating brought a breach of contract action against Associated Heating and Air Conditioning ("Associated Heating"). 366 Pa. Super. 430, 531 A.2d 494 (1987). Plaintiff was not a corporation, but rather an individual, Fred Jacobs, who did business under the name "Jacobs Air Conditioning and Heating." *Id.* at 496. Defendant Associated Heating filed preliminary objections arguing that there were no such corporation named Jacobs Air Conditioning and Heating and plaintiff lacked the capacity to sue. *Id.* at 495. The trial court agreed and dismissed the

4

complaint. *Id.* On appeal, the Superior Court observed that "[t]he fact that Jacob's Air Conditioning and Heating was a fictitious name or whether the fictitious name was owned by an individual or corporation does not affect [defendant's] alleged contractual obligations." *Id.* at 496. There the Superior Court reversed the trial court, holding that permitting plaintiff to amend the complaint to correct its own name would not prejudice the defendant. *Id.* at 497.

In yet another matter, *Clark v. Wakefern Food Corp.*, the Superior Court held that when defendant was erroneously sued as "Wakefern Food Corporation t/a Shop Rite # 411" based on information supplied by the store's insurer, amendment was permitted to name the actual owner. 910 A.2d 715, 717–18 (Pa. Super. 2006). As there was no dispute that the fall occurred in Shop Rite # 411 and that plaintiff Clark served the manager of that store with the complaint, the court held that "the proposed amendment is not an attempt to add a new party since the party named was 'Shop Rite,' the corporate name of the store's actual owner." *Id.* at 717. The Superior Court reasoned that designation of "Shop Rite # 411" was enough "to clearly indicate the 'corporate name' of the true owner. The fact that the *wrong* corporate name was added does not change the fact that the *right* corporate name is also on the complaint." *Id.* at 721 (emphasis original). *See also Powell v. Sutliff*, 410 Pa. 436, 189 A.2d 864, 864–65 (1963) (amendment of the complaint to change designation of Sutliff Chevrolet Company from a partnership to a corporation was permitted after the statute of limitations had run).

### C. As its Sole Proprietor, Ovrutsky is One and the Same with Defendant Northeast Medical Center.

In prior pleadings and papers filed with this Court, Mr. Ovrutsky admits to being the owner and operator of the property located at 9150–9200 Marshall Street, but denied that he and Northeast Medical Center were one and the same. Ovrutsky Brief at pp. 2–3 (filed October 10, 2016); Ovrutsky Brief, Exhibit A at pp. 2– 3, 8–10, 15–16 (leases naming Boris Ovrutsky as landlord for the property) (filed October 11, 2016); Ovrutsky Supplemental Brief at p. 2 (filed October 11, 2016). Mr. Ovrutsky thus argued that the statute of limitations had run and the complaint could not be amended to add him as a new defendant. *Id.* at pp.3–4, 7–10. In support of this argument, Mr. Ovrutsky cited *Hoare v. Bell Tel. Co.*, 500 A.2d 1112 (Pa. 1987), *Fredericks v. Sophocles*, 831 A.2d 147 (Pa. Super. 2003), and *Zercher v. Coca Cola, USA*, *supra*, which are all distinguishable from this case.

In *Hoare v. Bell Tel. Co.*, a premises liability case, the Hoares initially sued Monarch Furniture Company, a corporation t/d/b/a Slumber City ("Monarch"). Monarch's answers to interrogatories indicated Monarch was operated as a sole proprietorship by one Milton Kotler when the accident took place and became a corporation afterward, but before the Hoares filed suit. *Id.* at 1113. The Hoares then filed a motion to add Milton Kotler as an additional defendant, even though the statute of limitations had passed. *Id.* The Supreme Court denied the Hoares' motion to amend, distinguishing *Waugh* because in that case "Steelton Taxicab Company" was the fictitious name defendant Kosir always used.

In *Hoare*, Monarch Furniture Company was a viable and existing corporation by the time the litigation commenced and the plaintiffs erroneously brought suit against

the corporation and not against Kotler, who operated as a sole proprietor with the business name of Monarch Furniture Company at the time plaintiff fell. *Id.* at 1114. Unlike *Hoare*, the record in this case shows that Northeast Medical Center has remained a sole proprietorship, owned and operated by Mr. Ovrutsky, when the fall occurred through the entirety of the litigation. There is nothing in the record to indicate that Mr. Ovrutsky ever obtained corporate status for Northeast Medical Center before or even after the litigation commenced.

In a questionable effort to align himself with the defendant in *Hoare*, Mr. Ovrutsky pretended as if the Plaintiff had intended to name "Northeast Medical Center *Associates*" as the defendant in this case, when, in fact, the Plaintiff named "Northeast Medical Center" without the word "Associates" as the defendant. For example, at page 10 of his brief, Mr. Ovrutsky writes:

> Mr. Ovrutsky is an individual and has no interest in or affiliation with a business entity known as Northeast Medical Associates. Consequently, plaintiff's motion amend the complaint in this matter is an attempt to name an entirely new party to the action after the statute of limitations has expired.

*Id.* Mr. Ovrutsky obfuscated the record by capitalizing on the similarity between the identities of the named defendant "Northeast Medical Center", which Mr. Ovrutsky owned and operated as a sole proprietor, and "Northeast Medical Center Associates", the former owner of the property. This sleight of hand enabled Mr. Ovrutsky to argue, however improperly, that it would be a mistake to allow the Plaintiff to amend the complaint to name "Boris Ovrutsky d/b/a Northeast Medical Center" as the defendant because "Northeast Medical Center *Associates*"–which was *not* the named defendant–and Mr. Ovrutsky are separate entities–which, of course, they are. By amending the complaint in the manner requested by Plaintiff, Mr. Ovrutsky further

7

argued, again improperly, the Court would be adding a new party to the litigation after the statute of limitations had expired. Ovrutsky Brief at pp. 7–8, 10. This argument misrepresents what the Plaintiff sought to do in this Motion to Amend and his prior Motion to Amend.

Mr. Ovrutsky, an individual, acquired the property *from* an entity called "Northeast Medical Center Associates," and then operated the property himself, as a sole proprietor, under the name "Northeast Medical Center." The entity "Northeast Medical Center Associates" has never been named as a party to this action. Plaintiff named as a defendant "Northeast Medical Center d/b/a NE Medical Center." Unlike *Hoare*, there has been no evidence submitted that there was a change in ownership between February 14, 2014, the date Plaintiff fell, and January 20, 2016, the date Plaintiff commenced this action. Mr. Ovrutsky never alleged that he created a corporation, limited liability company partnership, or other entity to manage the property. Mr. Ovrutsky never submitted articles of incorporation, certificate of organization, or other papers to the court to indicate that a separate entity known as "Northeast Medical Center" existed on or before January 20, 2016.

*Fredericks* involved a suit against a partner but not the correct partnership, and the Superior Court held that amending the complaint to refer to the correct partnership after the statute of limitations had run was prohibited. 831 A.2d at 149–50. *Fredericks* is not applicable to this case as neither Plaintiff nor Mr. Ovrutsky have alleged that the property was owned or operated by a partnership.

Finally, in *Zercher*, plaintiffs used the trademarked name of a product instead of the name of the company which manufactured the product in their original complaint. After the statute of limitations had lapsed, plaintiffs attempted to amend the complaint

8

to substitute the manufacturer's name for the product's name (and later the manufacturer's successor by merger). The amendments were denied because none of the corporations who manufactured the product at issue had ever used the trademarked product name as a business name. 651 A.2d at 1134–1135. *Zercher* is inapplicable. In *Zercher* the plaintiff named as defendant a trademarked product, not the manufacturer, which were not, in fact, the same entity. Here, Northeast Medical Center and Mr. Ovrutsky are indistinguishable. There is no entity as the Northeast Medical Center apart from the personality of Boris Ovrutsky.

It is undisputed that Mr. Ovrutsky was the owner of the property at issue at the time Plaintiff was injured by virtue of a deed *from* Northeast Medical Center Associates to Mr. Ovrutsky, that was executed on January 5, 2005 and recorded on January 18, 2005. Plaintiff's Exhibit D. Mr. Ovrutsky executed leases with tenants in that property under his own name. Ovrutsky Brief Exhibit A (filed October 11, 2016). The property bears the sign "Northeast Medical Center." Lastly, Mr. Ovrutsky accepted service on behalf of Northeast Medical Center on June 21, 2016. Plaintiff's Exhibit E; Our Opinion of June 8, 2018 at pp.1–2. Mr. Ovrutsky's argument that he never did business as "Northeast Medical Center" ignores the fact that he owned and operated a building publicly known as "Northeast Medical Center." We find that at the times relevant to this action Mr. Ovrutsky and the Northeast Medical Center were one and the same.

As in *Waugh*, the complaint to should be amended to name the Defendant as "Boris Ovrutsky d/b/a Northeast Medical Center." Having failed to appear at trial or respond to the Motion to Amend of his own accord, Mr. Ovrutsky is in no position to argue prejudice or surprise in the disposition of this matter.

### D. The Coordinate Jurisdiction Rule Does Not Preclude Relief.

As previously stated, Judge New denied Plaintiff's prior Motion to Amend the complaint on November 30, 2016. We must therefore consider whether the coordinate jurisdiction rule bars us from granting Plaintiff the relief he seeks.

In most situations, the coordinate jurisdiction rule "commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25, 29 (2003)) (citing, *inter alia*, *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)).

> Departure [from the coordinate jurisdiction rule] . . . is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. . . . It is manifest that a judge may not lightly overrule the prior decision of another judge of the same court. In some circumstances, however, application of the rule can thwart the very purpose the rule was intended to serve, i.e., that judicial economy and efficiency be maintained.

*Ryan v. Berman*, 572 Pa. 156, 813 A.2d 792, 795 (2002) (citing *Starr*, 664 A.2d at 1331–32 (1995); *Salerno v. Philadelphia Newspapers*, Inc., 377 Pa. Super. 83, 546 A.2d 1168, 1170 (1988)) (quotation marks omitted). For the purposes of the coordinate jurisdiction rule, a "manifest injustice" only occurs in "situations in which adhering to the prior holding would be, in essence, plainly intolerable." *Zane*, 836 A.2d at 30. *See also Id.*, 836 A.2d at 34–35 ("it should not be considered a 'manifest injustice' that an erroneous prior order will merely delay correct resolution of a case, but rather, adherence to the prior order must be such that it will cause considerable substantive harm aside from delay . . . .") (Nigro, J., concurring).

The prior order did not state any reasons for the denial of the Plaintiff's prior motion to amend, which, based on information and belief, was issued on the papers alone without a hearing. At trial, we had an opportunity to assess and consider the relevant facts in the context of the entire record that would not have been available to Judge New in 2016.

As discussed *supra*, the record is clear that Mr. Ovrutsky owns the very property where the accident occurred, and owns and operates the property himself as "Northeast Medical Center". Where, as here, the named entity "Northeast Medical Center" is operated by a sole proprietor, Mr. Ovrutsky and Northeast Medical Center are regarded to be one and the same and that the statute of limitations will not bar amendment of the complaint to reflect that Mr. Ovrutsky does business as "Northeast Medical Center."

Under these circumstances, we are persuaded that the November 30, 2016 order denying Plaintiff's prior Motion to Amend the Complaint was clearly erroneous. We would not be surprised if the disposition of the prior Motion to Amend had something to do with Defendant's invalid representation to the Court that "Northeast Medical Center Associates", the *former* owner of the property, was the named defendant in this case, when the actual named defendant in this case is and was "Northeast Medical Center", the same identity Mr. Ovrutsky has used to conduct his business as the owner and operator of the Property.

Based on the record as we know it, enforcing the prior order would create a manifest injustice to the Plaintiff. Northeast Medical Center is not a corporation, limited liability company, partnership, or any other sort of entity. Without the amendment, Boris Ovrutsky, the owner of Northeast Medical Center at the time of Plaintiff's fall, might very well escape liability to Plaintiff for his negligence as its proprietor, even

11

though Mr. Ovrutsky and Northeast Medical Center are regarded under Pennsylvania law to be one and the same. As our Supreme Court said in *Waugh*, "[i]t would be strange indeed if the law would permit a person actually responsible for a civil . . . act to escape accountability because the summons or warrant served on him named him Richard Roe instead of John Doe." 89 A.2d at 528.

### III.       Conclusion

Based on the facts presented and the applicable law, we find that Boris Ovrutsky and the Northeast Medical Center were one and the same, and amending the complaint to correct the designation of defendant Northeast Medical Center to "Boris Ovrutsky d/b/a/ Northeast Medical Center" is proper. We also conclude that the coordinate jurisdiction rule does not prohibit us from granting the amendment requested.

We grant Plaintiff's Motion to Amend Complaint. An appropriate order follows.

BY THE COURT:

_____

Stella Tsai, J.

June 27, 2019

12